UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DARRYL DEAN ALBRIGHT,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 1:20-CV-438-JPK |
| KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Darryl Dean Albright, and Plaintiff's Opening Brief [DE 20]. Plaintiff requests that the decision of the Administrative Law Judge denying his claim for disability insurance benefits be reversed and remanded for further administrative proceedings. For the following reasons, the Court grants Plaintiff's request.

### PROCEDURAL BACKGROUND

On April 8, 2019, Plaintiff filed an application for disability insurance benefits, alleging disability as of September 14, 2017. The application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on April 8, 2020. On May 12, 2020, the ALJ issued an unfavorable decision, making the following findings:

> 1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.
>
> 2.   The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 21, 2018 through his date last insured of December 31, 2018.
>
> 3.   Through the date last insured, the claimant had the following severe impairments: peripheral vestibulopathy, chronic obstructive pulmonary disease (COPD), fibromyalgia, degenerative disc disease of the lumbar and cervical spine, migraine, coronary artery disease status post myocardial infarction and coronary artery bypass grafting and stenting, ischemic cardiomyopathy, hypertension,

obesity, history of right humeral head and right patellar fracture, anxiety, depression, and posttraumatic stress disorder (PTSD).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the [ALJ found] that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could have occasionally used foot controls. He could have never climbed ladders, ropes, or scaffolds, but could have occasionally climbed ramps and stairs, balanced, stooped, kneeled, crouched, and crawled. He could have frequently reached with the dominant right upper extremity in front and/or laterally and occasionally reached overhead with the dominant right upper extremity. He must have avoided concentrated exposure to fumes, odors, dust, gases, and poor ventilation. He must have avoided unprotected heights, moving mechanical parts, and operating a motor vehicle. He could not work in a very loud environment. The claimant could have performed work requiring simple instructions and routine, repetitive tasks. He could not have performed work requiring a specific production rate, such as assembly-line work. He could have made only simple work-related decisions. He could have maintained attention and concentration for two-hour segments. He could have responded appropriately to predictable, routine changes in the workplace. He could have had frequent interaction with supervisors apart from what was necessary for general instruction, task completion or training. He could have had frequent interaction with coworkers and the general public.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born [in 1969] and was 49 years old, which is defined as a younger individual age 45-49, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 21, 2018, the alleged onset date, through December 31, 2018, the date last insured.

(AR 17-29[1]).

The Appeals Council declined to assume jurisdiction, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*,

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which is found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

3

641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether he is unable to perform his past relevant work, and (5) if the claimant is unable to perform past

4

relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts that the ALJ's finding at step five was not supported by substantial evidence, because the VE did not identify a significant number of jobs available to Plaintiff in the national economy, and the methodology used to estimate the number of jobs available was flawed.

At step five, if an individual is to be found not disabled, the ALJ must demonstrate that there are a significant number of jobs in the national economy the claimant can perform. 20 C.F.R. § 416.960(c); *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018). The ALJ must support the step five conclusion with "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The testimony of a vocational expert ("VE") can count as substantial evidence, based on factors such as the expert's credentials, qualifications, and experience, and the content and clarity of the testimony. *Id*. The ALJ is entitled to rely on a VE's testimony unless the claimant objects to it at the hearing. *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021); *Coyier v. Saul*, 860 F. App'x 426, 428 (7th Cir. 2021). A claimant objecting to the VE's

estimate of jobs in the national economy must make a specific objection and "develop an argument or question the VE [ . . . ] about [the] methodology." *Coyier*, 860 F. App'x at 428. If an appropriate objection is made, the substantial evidence threshold requires the ALJ to "ensure that the approximation is the product of a reliable method." *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Chavez*, 895 F.3d at 968). This inquiry is made on a case-by-case basis, weighing whatever "markers of reliability" appear in the record to determine whether the testimony qualifies as substantial evidence. *Biestek*, 139 S. Ct. at 1157.

### A. Significant Number of Jobs

Plaintiff first argues that the VE did not identify a "significant number of jobs" in the national economy that he could perform. 20 C.F.R. § 416.960(c). The VE identified three representative jobs that Plaintiff could do considering his RFC: Information Clerk (an estimated 15,000 jobs in the national economy), Document Copier Preparer (45,000 jobs), and Charge Account Clerk (14,700 jobs). (AR 67). The VE's testimony emphasized that these were examples within a "category" of unskilled, sedentary jobs that Plaintiff could perform. (*Id.*). The ALJ accordingly found that significant jobs existed in the national economy that Plaintiff could perform. (AR 28).

Although his counsel did not make this specific objection at the hearing, Plaintiff now argues that the total number of jobs identified by the VE (74,700, counting all three sample jobs), was not a significant number. The Seventh Circuit Court of Appeals has not clearly defined what counts as a significant number of jobs. In *Primm v. Saul*, 789 F. App'x 539 (7th Cir. 2019), the Seventh Circuit held that 110,000 jobs nationally was "enough to support the ALJ's finding," quoting a previous holding that "1,000 jobs is a significant number." 789 F. App'x at 546 (quoting *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009)). Drawing on the same line of cases, the

6

Seventh Circuit has held that 55,000 jobs "is a significant number of jobs in the national economy." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (citing *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016), which in turn relies on *Liskowitz*). But the underlying statement that "1,000 jobs is a significant number" was made in the context of a regional economy, namely "the Milwaukee area." *See Liskowitz*, 559 F.3d at 743. Several courts have reasoned that because *Primm* and *Collins* are based on a holding about regional significance, the numbers in those cases do not determine a precise threshold for significance in the *national* economy. *See Milhem v. Kijakazi*, No. 1:20-CV-488-SLC, 2022 WL 263444, at *3 (N.D. Ind. Jan. 28, 2022) (discussing the "vulnerabilities" of *Primm* and *Collins*). At least two courts in this district have declined to rely on *Primm* and *Collins* for that reason. *See James A. v. Saul*, 471 F. Supp. 3d 856, 860 (N.D. Ind. 2020) (finding that 14,500 jobs was not significant and reliance on *Primm* for argument to the contrary was "suspect"); *Sally S. v. Berryhill*, No. 2:18-CV-460, 2019 WL 3335033, *11-12 (N.D. Ind. July 23, 2019) (finding that 120,350 jobs was not a significant number, and that cases involving regional numbers were unpersuasive in assessing significance in the national economy).

Notwithstanding this ambiguity, it appears to the Court that the holding in *Collins* – that "55,000 . . . is a significant number of jobs in the national economy" – is the clearest expression of the Seventh Circuit's view on this question. 743 F. App'x at 25. The Court is persuaded that the larger number presented in this case, 74,700, is also a significant number of jobs. In addition, the weight of case law, even among courts acknowledging the "vulnerabilities" in *Primm* and *Collins*, supports a conclusion that 74,700 jobs in the national economy is significant.[2]

---

[2] *See, e.g.*, *Zych v. Comm'r of Soc. Sec.*, No. 1:20-CV-00414-SLC, 2021 WL 5319880, at *4-5 (N.D. Ind. Nov. 16, 2021) (acknowledging issues with *Primm* and *Collins*, but finding that 41,000 jobs was significant and citing numerous cases in which lower estimates were found significant); *Engel v. Kijakazi*, No. 20-CV-1206-SCD, 2021 WL 4843871, at *11-12 (E.D. Wis. Oct. 18, 2021) (finding that 23,000 jobs was significant and citing numerous cases in which lower estimates were found significant); *Knapp v. Saul*, No. 1:20-CV-00011-PPS-SLC, 2021 WL 536121, at *5 (N.D.

Plaintiff does not point to any special circumstances in this case that would suggest a different conclusion. The 74,700 jobs were only examples of clerical jobs the VE thought Plaintiff could do. If Plaintiff could do those jobs, there would almost certainly be others available. *See Engel v. Kijakazi*, No. 20-CV-1206-SCD, 2021 WL 4843871, at *12 (E.D. Wis. Oct. 18, 2021) (finding that 23,000 jobs was significant, noting that "those jobs are merely representative of the types of jobs someone with [the claimant's] limitations could perform"). As the ALJ observed, these kinds of jobs are not "isolated" to a particular part of the country (AR 28 citing 20 C.F.R. § 404.1566), so there is no apparent reason why these jobs and similar jobs would not be available to Plaintiff. *See Angela L. v. Saul*, No. 1:20-CV-00481-SEB-DML, 2021 WL 2843207, at *6 (S.D. Ind. July 7, 2021) (finding that 53,200 jobs was significant: "We can take judicial notice of the fact that an office machine operator or photocopying machine operator is the type of clerical occupation that is likely well-dispersed throughout several regions throughout the nation."). The Court finds that notwithstanding Plaintiff's objection about the reliability of the estimate (*see infra*), 74,700 is a significant number of jobs available to Plaintiff in the national economy, and there is no reversible error on that basis.

**B. Reliability of Estimate**

Next, Plaintiff objects to the estimate on the basis that the VE failed to provide enough evidence that the method he used was reliable. By way of background, ALJs and VEs often refer to specific jobs by the names and numbers identified in the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. For example, within Standard Occupational

---

Ind. Jan. 27, 2021), report and recommendation adopted, No. 1:20-CV-11-PPS-SLC, 2021 WL 536483 (N.D. Ind. Feb. 12, 2021) (67,500 jobs was significant); *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019) (40,000 jobs was significant) (citing *Primm*).

Classification ("SOC") code 313 ("Chefs and Cooks, Hotels and Restaurants"), there are 25 different occupations with unique DOT codes (*e.g.*, 313.381-010 ("BAKER"); 313.381-014 ("PIZZA BAKER"); 313.381-018 ("PASTRY COOK APPRENTICE")).[3] The DOT describes job duties and requirements but does not indicate the prevalence of those jobs within the national economy. A separate publication, the Department of Labor's compilation of Occupational Employment Statistics[4], provides estimates about the prevalence of certain jobs, but classifies jobs more broadly than the DOT code. The upshot is that VEs often must estimate how many specific positions are available based on estimates of broader categories. *See Chavez*, 895 F.3d at 965-66.

Two methods of estimation have attracted particular attention within Seventh Circuit case law. One is the "equal distribution" method, which assumes that if there are a certain number of jobs within a particular SOC category, those jobs are spread equally among the various DOT jobs that make up that category. The Seventh Circuit has criticized this approach:

> [I]t does not take much knowledge of job markets to know that, while certain jobs may exist in large numbers (for example, a "pizza baker," DOT 313.381-014, who "prepares and bakes pizza pies"), others clearly do not (such as a "chef de froid," DOT 313.281-010, who designs "artistic food arrangements for buffets in formal restaurants" including "mold[ing] butter into artistic forms"). Or, by way of a second example, take "Cashiers and Tellers" [. . .] Of the 28 positions included in that group, six exist only in the racing industry, with five of those six existing only at horse-racing tracks. It seems unlikely that over 20% of all cashier and teller jobs in today's economy are at racetracks.

*Id*. at 966 (citation omitted) (listing cases). However, the Seventh Circuit has not conclusively rejected the approach as unreliable. *Coyier*, 860 F. App'x at 428 (7th Cir. 2021) (holding that *Chavez* "did not enjoin the use of the equal-distribution method"). VEs have also used a statistical database, Job Browser Pro (also known as "SkillTRAN," the name of the company that produces it), which estimates employment numbers and "[cross-references] to all major national

---

[3] *See* https://occupationalinfo.org/defset5_2413.html (last visited March 4, 2022).
[4] *See* https://www.bls.gov/oes/tables.htm (last visited March 4, 2022).

9

occupational coding systems."[5] Although SkillTRAN appears to be a commonly used database, the ALJ must still elicit "substantial evidence" showing that the way the VE used the program was reliable. *See Dawn L. C. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00626-GCS, 2021 WL 4488421, at *6-7 (S.D. Ill. Sept. 24, 2021) (compiling numerous cases discussing vocational experts' use of SkillTRAN). The VE does not have to "reveal the precise mechanics and statistical model involved," *Bruno v. Saul*, 817 F. App'x 238, 243 (7th Cir. 2020), but must "provide some modicum of confidence in its reliability." *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020).

At the hearing, the ALJ elicited testimony from the VE regarding the VE's qualifications and familiarity with the case. (AR 64-66). The ALJ asked if Plaintiff's counsel[6] had any "objections to the vocational expert" based on those qualifications, and counsel replied that there were no such objections. (AR 66). The ALJ then identified the three representative clerical jobs and corresponding estimates of the number of those jobs in the national economy. (AR 67). Questioned by Plaintiff's counsel regarding the methodology used to generate the estimates, the VE testified as follows:

> [Plaintiff's counsel]: And what methodology do you use to get from Bureau of Labor statistic numbers to the national numbers for job classification?
>
> [VE]: I use SkillTRAN.
>
> P: Do you know [if they use] equal distribution or what mathematical equation that they use?
>
> VE: No, I [. . .] don't know anything more than what you can look up online as far as how they calculate and then as far as how we do it, we go in by the DOT number and then look at the different industry codes where the jobs would exist there for that particular job title and that's how we come up with the numbers.

---

[5] *See* https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited March 4, 2022).
[6] Plaintiff's attorney before this Court was not the attorney representing him at the administrative hearing.

> P: Okay, thank you. . . . Judge, I would just object to the step five numbers based on the reasoning outlined in the Alvarez[7] [] case.

(AR 71). The VE further testified that SkillTRAN is "accepted by other vocational experts." (*Id*.).

In the written decision, the ALJ addressed the objection as follows:

> The claimant's representative objected to these job numbers on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable. The undersigned overrules this objection. The vocational expert has professional knowledge and experience in job placement. The vocational expert also explained his methodology during the hearing regarding how he acquires job numbers, including his use of SkillTRAN, which he testified is an acceptable source within the vocational arena. He also testified that he relied on his knowledge, experiencing [sic], and training as a vocational expert, which the representative acknowledged as acceptable based on her failure to object to the vocational expert's qualifications.
>
> Moreover, there is nothing in the Regulations that require a specific methodology be used. . . . The undersigned notes that the number of jobs cited by the vocational expert is an estimate based on reliable information from various sources, including the DOT, of which the undersigned takes administrative notice. Accordingly, the vocational expert's job information is found to be reliable.

(AR 28 (citations omitted)). In briefing before this Court, Plaintiff objects that the VE's estimate was either "pulled out of thin air," or, if there was a formula, the VE's inability to describe it prevents meaningful judicial review. Pl. Br. 16-20 [DE 20].

The Commissioner responds that the VE provided a sufficient explanation of the method used, and that many courts have approved VE estimates that relied on SkillTRAN. Resp. Br. 8-10 [DE 21]. The Commissioner also asserts that SkillTRAN itself does not rely on the equal distribution method[8], and Plaintiff has not disputed that point. Plaintiff's objection at the hearing based on *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015), was not exactly on point, because that

---

[7] Plaintiff indicates that this remark was wrongly transcribed, and that counsel was referring to *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015). The Commissioner does not dispute that characterization, and therefore the Court assumes that Plaintiff's counsel based the objection on *Alaura*.

[8] Resp. Br. 9 n. 6 [DE 21], citing *Chavez*, 895 F.3d at 966 (describing SkillTRAN as an example of the "occupational density method," distinct from equal distribution)); *see also Dawn L. C.*, 2021 WL 4488421, at *6.

11

opinion mostly concerned the equal distribution method. *See id*. at 507-08. Nonetheless, the objection triggered the ALJ's obligation to "ensure that the approximation is the product of a reliable method." *See Brace*, 970 F.3d at 821-23 (remanding where VE testimony did not clearly establish the method used, and counsel objected based on *Alaura*). On this point, the ALJ's findings were not supported by substantial evidence, and the case must be remanded.

The VE testified that she "did not know anything more than what you can look up online" about SkillTRAN's methodology. (AR 71). It is not clear whether the VE understood the methodology and preferred to direct counsel to a more detailed explanation, or whether the VE believed it was not necessary to understand the methodology because it was available online. Regardless, it is not clear what online sources the VE was referring to, and they were not entered into evidence, so ultimately there was no real explanation[9] in the record. *Jones*, 2021 WL 100357, at *3 (remanding where the VE alluded to a report that addressed the VE's methodology but "it appears that neither the ALJ nor [the claimant] had access" to the report). This does not satisfy the substantial evidence standard. *See Ruenger v. Kijakazi,* 2022 WL 134748 at *3 (7th Cir. Jan. 14, 2022) ("Although the ALJ asked her to describe her methodology, substantial evidence requires more. The ALJ must 'hold the [vocational expert] to account for the reliability of her job-number estimates.'") (quoting *Chavez*, 895 F.3d at 970). It appears that the VE and the ALJ assumed any method based on SkillTRAN was self-evidently reliable – that is, the "agency [took] a 'trust me' approach rather than – as required by the statute and regulations – carrying its burden" to show the method was reliable. *Jones*, 2021 WL 100357, at *3 (quoting *Brace*, 970 F.3d at 823).

---

[9] The VE also stated that "we go in by the DOT number and then look at the different industry codes where the jobs would exist there for that particular job title and that's how we come up with the numbers." (AR 71). This does not help to explain the VE's method, except to emphasize the previously accepted point that the VE uses numbers that SkillTRAN generates. Courts have rejected these kinds of explanations as inadequate. *See, e.g., Brace*, 970 F.3d at 822 (VE's vague and "unilluminating" testimony did not meet the substantial evidence standard); *Hood v. Saul*, No. 1:19-CV-370-TLS, 2021 WL 5002717, at *4 (N.D. Ind. Oct. 28, 2021).

The Commissioner notes that courts have repeatedly "upheld a VE's reliance on SkillTRAN software." (Resp. Br. at 12). But this misstates the ALJ's burden: "[T]he issue here is not whether SkillTRAN is reliable as a matter of law, but rather whether the VE's testimony in this case, drawing in part on the SkillTRAN data, was sufficient to sustain the agency's step five burden." *Dunn v. Kijakazi*, No. 20-C-1113, 2021 WL 5105169, at *12-14 (E.D. Wis. Sept. 24, 2021). Certainly, a VE's use of SkillTRAN can contribute to a finding of substantial evidence when supported by a clear explanation, which does not have to be a statistical treatise. *See, e.g., Bruno*, 817 F. App'x at 243 ("Although the VE's description did not reveal the precise mechanics and statistical model involved [with SkillTRAN], it nevertheless constitutes a 'reasoned and principled explanation.'"); *Khuzaie v. Comm'r of Soc. Sec.*, No. 1:14-CV-00199-SLC, 2016 WL 1253537, at *11-15 (N.D. Ind. Mar. 30, 2016).

But in a case like this, when the explanation is unclear and leaves doubt about the method used, the mere fact that SkillTRAN was used is not itself substantial evidence of reliability. *See, e.g., Hood v. Saul*, No. 1:19-CV-370-TLS, 2021 WL 5002717, at *4 (N.D. Ind. Oct. 28, 2021) ("Stating that SkillTRAN 'looks at the percentages' does not 'cogently and thoroughly' explain the methodology of how the job number estimates were obtained."); *Maples v. Saul*, No. 1:20-CV-157-PPS, 2021 WL 1291766, at *4-6 (N.D. Ind. Apr. 7, 2021); *Jones*, 2021 WL 100357, at *3; *Westendorf v. Saul*, No. 19-CV-1019-JDP, 2020 WL 4381991, at *3-4 (W.D. Wis. July 31, 2020) ("Job Browser Pro might be a useful tool, but the VE needs to be able to explain how Job Browser Pro makes its job number estimates, how she used the software to generate her own estimates, and why she believes those estimates are reliable.").

It is understandable that ALJs, faced with a dispute about methodologies for vocational estimates, may defer to an expert in that field. However, this must be balanced against a claimant's

13

right to understand the basis for the decision, and if appropriate, to meaningfully challenge it. Recent Seventh Circuit case law has made clear that if there is an objection, VEs must give a cogent explanation of what they are doing; the fact that a VE is an expert and uses "recognized sources" is not itself substantial evidence of a reliable method. As described by Judge Scudder:

> [N]obody can explain with coherence or confidence what the VE did to arrive at her job-numbers estimate. To my eye, the VE's testimony seemed rushed and rote, as if she expected certain questions and gave hurried and mechanical answers, without taking care—even in response to repeated objection—to explain what she did to arrive at the job-numbers estimate or why that method was reliable . . . Faced with a transcript like this one, attempting to conduct judicial review is an exercise in futility. That is why we have concluded that substantial evidence did not support the ALJ's denial of benefits . . .
>
> At the very least, the record would benefit from everyone slowing down when VEs take the stand. A disability determination may well mark the difference between income and no income for the claimant. With so much at stake in these proceedings, it is essential that a reviewing court be able to decipher the evidentiary record.

*Ruenger*, 2022 WL 134748 at *4-5 (Jan. 14, 2022) (Scudder, J., concurring).

In this case, the VE's testimony was "neither cogent nor thorough," and the method used remains unclear; therefore, there is not substantial evidence that the estimate was reliable. *Brace*, 970 F.3d at 822. With due recognition of the efforts of the ALJ and VE, this requires remand.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Opening Brief [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 4th day of March, 2022.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT

14